IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Tuomey d/b/a Tuomey Healthcare System, Inc., | ) <br> ) C/A No. 3:16-2806-MBS <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) <br> ) **OPINION AND ORDER** |
| Nexsen Pruet, LLC, | ) <br> ) |
| Defendant. | ) <br> ) |

On July 12, 2016, Plaintiff Tuomey d/b/a Tuomey Healthcare System, Inc., filed the within action in the Court of Common Pleas for Sumter County, South Carolina, alleging professional malpractice against its former counsel, Defendant Nexsen Pruet, LLC. On August 11, 2016, Defendant removed the action to federal court on the basis of federal question jurisdiction. See 28 U.S.C. § 1331.

This matter is before the court on Plaintiff's motion to remand, which motion was filed on August 18, 2016. Defendant filed a response in opposition on September 6, 2016, to which Plaintiff filed a reply on September 16, 2016. The court held a hearing on January 19, 2017. After review of the papers, arguments of counsel, and applicable law, the court concludes that Plaintiff's motion to remand should be granted.

I. FACTS

The underlying litigation involved a qui tam action pursued by the United States under the Stark Law, 42 U.S.C. § 1395nn, which prohibits physicians from making referrals to entities where "[t]he referring physician . . . receives aggregate compensation . . . that varies with, or takes into

account, the volume or value of referrals or other business generated by the referring physician for the entity furnishing" the designated health services. 42 C.F.R. § 411.354(c)(2)(ii). With the advice of Defendant, Plaintiff had entered into a number of part-time employment contracts with local physicians requiring the physicians to perform outpatient surgeries at Plaintiff's facility and compensating them based upon the number of outpatient surgeries performed. Eventually, a jury found the contracts to be violative of the Stark Law and the False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA"). See United States of America ex rel. Drakeford v. Tuomey d/b/a Tuomey Healthcare System, Inc., C/A No. 3:05-2858-MBS. On October 2, 2013, an amended judgment was entered against Tuomey in the amount of $237,454,195.00, plus post judgment at the rate of .10%. The Court of Appeals for the Fourth Circuit affirmed. United States ex re. Drakeford v. Tuomey d/b/a Tuomey Healthcare System, Inc., 792 F.3d 364 (4th Cir. 2015). Plaintiff and the United States subsequently negotiated a reduction of the amount owed pursuant to the judgment, which included Plaintiff's sale of its assets to another provider.

In the current action, Plaintiff alleges Defendant breached its duty of care by failing to render independent, competent, and ethical legal professional services that would have prevented Plaintiff from entering into prohibited contracts. Specifically, Plaintiff asserts Defendant was negligence in the following ways:

a. Designing, drafting, and recommending that Tuomey enter into part-time employment contracts requiring the physicians to perform all of their outpatient surgeries at Tuomey's OSC for ten (10) years and providing compensation to the physicians which fluctuated based upon the number of out-patient surgical procedures performed at the OSC and exceeded the physicians' collections by approximately 20% per year;

b. Informing the physicians in meetings that were audio recorded that the purpose of the part-time employment agreements is a "way of sharing revenues with those

people who might otherwise…go out and compete with us by trying to build their own center;"

c. Informing physicians in meetings that were audio recorded that the purpose of the Contracts was to "replicate in many ways the investor owned for-profit ASC…So it's essentially like phantom stock, phantom ownership, as part and parcel of the employment agreement;"

d. Failing to recognize that the specific type of part-time agreements Nexsen Pruet designed, drafted and recommend Tuomey enter had never before been tested and that based upon the amount of compensation and structure of the compensation arrangements there was a very high risk that if challenged the Contracts would be found to violate Stark and the AKS;

e. Failing to inform and advise Tuomey that the specific type of part-time agreements being proposed had never before been tested and that based upon the amount of compensation and structure of the compensation arrangements there was a very high risk that if challenged the Contracts would be found to violate Stark and the AKS;

f. Representing to Tuomey that there was a high level of certainty for the Contracts in terms of compliance;

g. Representing to Tuomey that the Contracts were commercially reasonable;

h. Advising Tuomey that because Nexsen Pruet obtained fair market value opinions from Cejka there was little or no risk that the Government could find that the compensation provided under the Contracts was not fair market value or commercially reasonable;

i. Representing to counsel for Dr. Drakeford that the Contracts were commercially reasonable since Tuomey makes up for the money it loses on the Contracts from the facility fees Tuomey collects when the doctors perform procedures;

j. Representing to the Tuomey Board in a memorandum prepared on behalf of the Tuomey administration that the Contracts would be structured to comply with applicable Stark exceptions;

k. Advising Tuomey that the worst case scenario Tuomey would realistically face if the Contracts were challenged by the federal government would be to dismantle or unwind the Contracts;

l. Failing to advise Tuomey to obtain a written confidentiality agreement with Dr.

Drakeford and his counsel regarding the dissemination or restrictions on the use of McAnaney's advice, and thus preventing Dr. Drakeford from using the attorney client information provided by McAnaney against Tuomey;

m.  Failing to fully inform Tuomey of the full extent of McAnaney's negative view of the Contracts;

n.  Affirmatively preventing Tuomey from obtaining information from McAnaney regarding his opinions after Tuomey had retained McAnaney upon Nexsen Pruet's recommendation;

o.  Advising Tuomey's Board that it would take a "totally incompetent" reviewer who "should be fired" if the reviewer determined the Contracts violated the law, thus implying that McAnaney was totally incompetent and should be fired.

p.  Representing to Tuomey that McAnaney had a conflict of interest which prevented him from putting his opinions in writing;

q.  Failing to withdraw from representing Tuomey in relation to the Contracts after the United States initiated its investigation of both Tuomey and Nexsen Pruet;

r.  Advising Tuomey not to dismantle or unwind the Contracts after being requested to do so by the United States and advising Tuomey that unwinding the Contracts would be an admission of guilt;

s.  Failing to exercise independent and professional judgment and candid advice as required by Rule 2.1 of the Model Rules of Professional Conduct;

t.  Failing to explain matters to the extent reasonably necessary to permit the client to make informed decisions as required by Rule 1.4 of the Model Rules of Professional Conduct;

u.  Continuing representing Tuomey when Nexsen Pruet had a conflict of interest and an interest in the subject matter under investigation as prohibited by Rule 1.7 of the Model Rules of Professional Conduct;

v.  Failing to advise Tuomey to restructure and/or unwind the Contracts after being placed on notice of the Government investigation in order to minimize the financial consequences of an adverse outcome;

w.  Advising Tuomey to enter into two (2) additional contracts after Nexsen Pruet learned that it was under federal investigation.

4

Complaint, ECF No. 1-1, 23-26.

Plaintiff seeks damages consisting of (1) $72,406,860, which represents a compromise of Plaintiff's refund liability to the Medicare Program of $52,766,519 plus interest since 2005; (2) defense costs of at least $15,000,000; (3) reorganization and transactional costs relating to the sale of assets of at least $5,000,000; and (4) loss of value to business goodwill of the hospital totaling at least $25,000,000.

## DISCUSSION

A defendant in a state civil action may remove the case to federal court only if the federal court can exercise original jurisdiction over at least one of the asserted claims. 28 U.S.C. § 1441(a)-(c). Once an action is removed to federal court, the plaintiff may file a motion to remand the case to state court if there is a contention that jurisdiction is defective. 28 U.S.C. § 1447(c). The party seeking removal, and not the party seeking remand, bears the burden of establishing jurisdiction in the federal court. Mulcahy v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)). Federal courts are obliged to carefully scrutinize challenges to jurisdictional authority, and must "do more than simply point jurisdictional traffic in the direction of state courts." 17th Street Assocs., LLP v. Markel Int'l Ins. Co. Ltd., 373 F. Supp. 2d 584, 592 (E.D. Va. 2005).

On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." Richardson v. Phillip Morris, Inc., 950 F. Supp. 700, 701-02 (D. Md. 1997) (citation omitted). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahy, 29 F.3d at 151; see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 815-16 (4th Cir. 2004).

Law/Analysis

A plaintiff in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach. Stokes-Craven Holding Corp. V. Robinson, 787 S.E.2d 485, 490 (S.C. 2016) (citing Holmes v. Haynsworth, Sinkler & Boyd, P.A., 760 S.E.2d 399, 407 (S.C. 2014)). Furthermore, a plaintiff is required to demonstrate that "he or she 'most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice.'" Id. (citing Doe v. Howe, 626 S.E.2d 25, 30 (S.C. Ct. App.2005)). Here, Plaintiff contends that, had it been properly counseled by Defendant regarding the high risk posed by the part-time employment agreements, it never would have entered into the contracts, and it would have incurred no liability under the Stark Law and the FCA.

Defendant contends that the within action properly is removable because issues of causation and the measure of damages turn on substantial questions of federal law. Defendant asserts that Plaintiff has "inextricably intertwined the element of proximate cause with the imposition of federal FCA liability in the [underlying] litigation[.]" ECF No. 18, 10. Defendant contends that additional proximate causation questions can only be answered by resolution of federal law, including: (1) whether an attorney's advice can be the proximate cause of FCA liability when Plaintiff argued, and the jury rejected, Plaintiff's advice of counsel defense; and (2) whether Plaintiff should have taken additional steps in the underlying litigation to address the possibility of a materiality defense based upon pending Supreme Court litigation in Universal Health Services, Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989 (2016). In addition, Defendant argues that Plaintiff's demand for damages represent an attempt to reallocate its liability to the United States, which, Defendant argues, requires

6

the interpretation or possible creation of federal common law as to whether Plaintiff can shift responsibility for those damages.

As an initial matter, the court agrees with Plaintiff that Defendant is attempting to couch its potential defenses as substantial questions of federal law. Under the "well-pleaded complaint rule," federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. Kinsey v. Virginia Elec. & Power Co., Civil Action No. 5:16-cv-00058, 2016 WL 7422257, *2 (W.D. Va. Dec. 22, 2016) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 391 (1987)). Plaintiff's complaint does not call into question the proper interpretation of the Stark Law or the FCA, but rather concerns the reasonableness of Defendant's advice regarding the part-time employment contracts vis-a-vis federal law.

Defendant urges the court to consider its arguments in light of Gunn v. Minton, 133 S. C. 1059 (2013). In Gunn, the Supreme Court discussed a "special and small category" of cases wherein the pertinent inquiry is: "Does the 'state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities'?" Id. at 1065 (quoting Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg, 545 U.S. 308, 314 (2005)). The Court observed that federal jurisdiction over a state law claim will lie "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id.

In Gunn, the plaintiff brought a legal malpractice claim against the defendant, asserting that he would have prevailed in the underlying patent infringement case if the defendant had made an experimental-use argument on his behalf. As to the first two Grable factors, the Court concluded

7

that the federal issue was "necessarily raised" and "actually disputed" because resolution of the issue would require application of patent law; i.e., whether the experimental-use argument was applicable and whether it would have changed the outcome of the earlier litigation. Unlike Gunn, the within legal malpractice action does not involve alternative arguments that could have been raised to relieve Plaintiff of liability under the Stark Law and FCA. It has been established that Defendant provided legal advice to Plaintiff regarding the part-time employment agreements and that the agreements violated federal law. The dispositive issue is whether Defendant was reasonable in the advice it gave. The court does not discern that resolution of a Stark Law or FCA question is "necessarily raised" or "actually disputed" here.

Regarding substantiality, the court must look to the importance of the issue to the federal system as a whole. Gunn, 133 S. Ct. at 1066. Three factors to consider are:

> First, a pure question of law is more likely to be a substantial federal question. Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 700–01, 126 S. Ct. 2121, 2137, 165 L. Ed.2d 131 (2006). Second, a question that will control many other cases is more likely to be a substantial federal question. Id. Third, a question that the government has a strong interest in litigating in a federal forum is more likely to be a substantial federal question. Grable, 545 U.S. at 315–16, 125 S. Ct. at 2368–69.

MDS (Canada), Inc. v. Rad Source Tech., Inc., 720 F.3d 833, 842 (11th Cir. 2013).

In this case, whether Defendant breached a duty to Plaintiff, and whether the breach was a direct and proximate cause of damages to Plaintiff, are questions of fact for the jury. Defendant's arguments regarding the ability of Plaintiff to shift its liability are, by Defendant's own admission, unique to the circumstances of this case. Finally, there is little governmental interest in adjudication of state law professional malpractice claims in federal court.

Finally, the court concludes that federal issues relevant to Plaintiff's professional malpractice

claims are not of a kind that could be resolved in this court "without disrupting the federal-state balance approved by Congress." Gunn, 133 S. Ct. at 1065.  South Carolina has a paramount interest in ensuring the professional standards of attorneys practicing in the state.  See Goldfarb v. Va. State Bar, 421 U.S. 773, 792 (1975).

The court concludes that the complaint neither arises under federal question nor falls within the "special and small category" of state law cases for which federal jurisdiction lies.  The court therefore lacks subject matter jurisdiction.

## CONCLUSION

For the reasons stated, Plaintiff's motion to remand (ECF No. 10) is **granted**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 31, 2017